UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                             :
                                                   :    Chapter 11
FUSION CONNECT, INC., et al.,                      :
                                                   :    Case No. 19-11811 (SMB)
                                                   :
                    Debtors.                       :    (Jointly Administered)
-------------------------------------------------------X
UNITED STATES OF AMERICA,                          :
                                                   :
           Plaintiff,                              :
                                                   :
           -against-                               :
                                                   :
FUSION CONNECT, INC.; FUSION BCHI                  :
ACQUISITION LLC; FUSION NBS                        :    Adv. Pro. No. 20-01009 (SMB)
ACQUISITION CORP.; FUSION LLC; FUSION              :
MPHC HOLDING CORPORATION; FUSION                   :
MPHC GROUP, INC.; FUSION CLOUD                     :
COMPANY LLC; FUSION CLOUD SERVICES,                :
LLC; FUSION CB HOLDINGS, INC.; FUSION              :
COMMUNICATIONS, LLC; FUSION                        :
TELECOM, LLC; FUSION TEXAS HOLDINGS,               :
INC.; FUSION TELECOM OF KANSAS, LLC;               :
FUSION TELECOM OF OKLAHOMA, LLC;                   :
FUSION TELECOM OF MISSOURI, LLC;                   :
FUSION TELECOM OF TEXAS LTD., L.L.P.;              :
BIRCAN HOLDINGS, LLC; FUSION                       :
MANAGEMENT SERVICES LLC; AND                       :
FUSION PM HOLDINGS, INC.,                          :
                                                   :
                    Defendants.                    :
-------------------------------------------------------X

**MEMORANDUM DECISION GRANTING
DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
    Gary T. Holtzer, Esq.
    Sunny Singh, Esq.

>     Jared R. Friedmann, Esq.
>         Of Counsel

*Attorneys for Defendants*

AUDREY STRAUSS
Acting United States Attorney for the
  Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

>     Talia Kraemer
>         Assistant United States Attorney
>             Of Counsel

*Attorneys for Plaintiff*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The Plaintiff, the United States of America ("Government"), commenced this adversary proceeding against the Debtor Defendants (collectively, "Fusion") seeking a declaration that a non-compensatory civil penalty arising from the fraudulent practices of Fusion's predecessor was not dischargeable under 11 U.S.C. § 1141(d)(6)(A). Fusion moved to dismiss the complaint contending, in the main, that the cited discharge exception does not cover non-compensatory penalties even if they arise, as here, from a fraud perpetrated on consumers where the Government was not itself a victim of the fraud. (*Memorandum of Law in Support of Defendants' Motion to Dismiss Adversary Complaint*, dated Feb. 20, 2020 ("*Motion*") (ECF Doc. # 7); *see also Corrected Reply Memorandum in Further Support of Defendants' Motion to Dismiss Adversary Complaint*, dated May 12, 2020 ("*Reply*") (ECF Doc. # 15).) The Government opposed the motion to dismiss, (*The United States of America's Memorandum of Law in Opposition to Defendants' Motion to Dismiss*, dated Apr. 7, 2020 ("*Opposition*") (ECF Doc. #9)), arguing that the discharge exception is not limited to the victims of a fraud

and applies to any debt arising as the result of fraudulent conduct.  For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND

The background discussion is derived from the *Complaint of the United States of America to Determine Dischargeability of Debt and to Object to Discharge*, dated January 17, 2020 ("*Complaint*") (ECF Doc. # 1).  The facts are undisputed and the motion to dismiss presents a straightforward question of law.  Birch Communications, Inc. ("Birch"), Fusion's predecessor, provided local exchange and telecommunications services.  (*Complaint* ¶¶ 8, 41.)  For years, Birch telemarketers misrepresented their identities and the purpose of their calls to consumers to induce them to switch to Birch's services.  (*Id.* ¶¶ 2, 12-21.)  Birch's actions harmed consumers when (i) Birch billed consumers for unwanted services, (ii) charged early termination fees for cancellation of Birch's services, (iii) caused consumers to lose phone or internet service for extended periods, and (iv) caused consumers—many of whom were small businesses—to expend significant time and effort to change service back from Birch's unwanted services to their prior telecommunications providers.  (*Id.* ¶¶ 2, 22-27.)

In 2015, the Enforcement Bureau (the "Bureau") of the Federal Communications Commission (the "FCC") initiated an investigation into these fraudulent practices.  (*Id.* ¶¶ 9, 11.)  To resolve the Bureau's investigation, Birch entered into a consent decree, which was adopted by an order of the FCC dated Dec. 29, 2016 (the "Consent Decree").[1]  (*Id.* ¶ 34.)  As described in the Consent Decree, the Bureau alleged that Birch had

---

[1] A copy of the Consent Decree, dated Dec. 29, 2016, is annexed as Exhibit B to the *Complaint.*

violated (i) section 201(b) of the Communications Act of 1934, 47 U.S.C. § 201(b), by making misrepresentations in its marketing calls to consumers and by placing unauthorized charges on consumers' telephone bills, a practice known as "cramming," and (ii) section 258 of the Communications Act of 1934, 47 U.S.C. § 258, as well as FCC rules, 47 C.F.R. § 64.1120, by submitting requests to switch consumers' long-distance providers without verifying the consumers' authorization for the change in compliance with FCC rules, a practice known as "slamming." (*Id.* ¶ 35.) The Consent Decree required Birch to issue refunds or credits to consumers totaling $1.9 million and pay a civil penalty to the United States in the amount of $4.2 million (the "FCC Penalty") in equal monthly installments over five years. (*Id.* ¶¶ 37-38.) The Consent Decree is binding on Birch's successors, assigns, and transferees, (*id.* ¶ 40), including Fusion, which does not argue otherwise.[2]

Fusion filed these chapter 11 cases on June 3, 2019. (*Id.* ¶ 43.) By then, Birch had already issued the $1.9 million in refunds and credits to consumers required by the Consent Decree. (*Id.* ¶ 45.) However, $2.1 million of the $4.2 million FCC Penalty remained outstanding, (*id.* ¶ 44), and the FCC filed proofs of claim for this amount. (*Id.* ¶ 47.) Further references to the FCC Penalty are limited to this outstanding amount. On December 17, 2019, the Court entered a Confirmation Order that provided that Fusion's obligations to pay the FCC Penalty "shall depend upon a determination of whether those obligations are dischargeable." (*Id.* ¶ 48.)

---

[2] In May and June of 2018, the Debtors closed a reverse merger transaction with Birch Holdings, Birch's parent. (*Complaint* ¶ 41.) The Debtors now own the Birch business as Fusion BCHI Acquisition LLC ("Fusion BCHI"). (*Id.* ¶ 5.)

The Government filed the instant adversary proceeding on January 17, 2020 requesting a determination that the FCC Penalty is not dischargeable pursuant to Bankruptcy Code §§ 523(a)(2)(A) and 1141(d)(6). (*Id.* ¶ 58.) Fusion moved to dismiss on two related grounds. First, the FCC Penalty fell within Bankruptcy Code § 523(a)(7) relating to non-compensatory fines and penalties owed to a governmental unit. That exception to discharge does not apply in a corporate chapter 11. (*Motion* at 8-10.) Second, the FCC Penalty did not come within Bankruptcy Code § 523(a)(2)(A), the fraud exception, because Birch did not make any misrepresentations to the FCC with the intention and purpose of deceiving the FCC, the FCC did not rely on any misrepresentations by Birch, and the FCC did not sustain any loss or damages as a proximate result of Fusion's misrepresentations. (*Id.* at 11-12.) Because section 1141(d)(6) of the Bankruptcy Code is coextensive with section 523(a)(2)(A) but not section 523(a)(7), the FCC Penalty is dischargeable in a chapter 11 corporate bankruptcy. (*Id.* at 10-11.)

The Government opposed the motion. Citing *Cohen v. de la Cruz*, 523 U.S. 213 (1998) ("*Cohen*"), the Government maintained that section 523(a)(2)(A) is broader than Fusion argued and covered any liability that arose from fraud and not solely debts owed to the victims of the fraud or debts for the value of money or property obtained by fraud. (*Opposition* at 4-7.) Section 1141(d)(6) restricts the exception to frauds "owed to a domestic governmental unit," 11 U.S.C. § 1141(d)(6)(A) but does not further restrict the fraud exception. (*Opposition* at 8.) Furthermore, it is irrelevant whether section 523(a)(7) would render the FCC Penalty non-dischargeable only in an individual debtor case and does not apply in Fusion's chapter 11 case. (*Id.* at 13) (citing *Husky Int'l Elecs. Inc. v. Ritz*, 136 S. Ct. 1581, 1588 (2016) ("*Husky*") (redundancies among the discharge

exceptions in section 523, including 523(a)(2), are "unremarkable" and "unavoidable")). Because the FCC Penalty fell within the type of debt covered by section 523(a)(2)(A), section 1141(d)(6)(A) rendered the FCC Penalty non-dischargeable. (*Opposition* at 15.)

## DISCUSSION

A basic policy animating the Bankruptcy Code is that relief should be available to the "honest but unfortunate debtor." *Cohen*, 523 U.S. at 217 (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Furthermore, "[e]xceptions to dischargeability are 'narrowly construed against the creditor's objections, and confined to those plainly expressed in the [Bankruptcy] Code.'" *Bethpage Fed. Credit Union v. Furio* (*In re Furio*), 77 F.3d 622, 624 (2d Cir. 1996) (quoting *Household Finance Corp. v. Howard (In re Howard),* 73 B.R. 694, 700 (Bankr. N.D. Ind. 1987)); *accord Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013); *Kawaauhau v. Geiger,* 523 U.S. 57, 62 (1998); *Gleason v. Thaw,* 236 U.S. 558, 562 (1915). Nevertheless, the bankruptcy law has "long prohibited debtors from discharging liabilities incurred on account of their fraud." *Cohen,* 523 U.S. at 217. Section 523(a)(2)(A) excepts from the general discharge any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." In addition, section 523(a)(2)(B) excepts from discharge certain debts arising from the use of a materially false written statement relating to the debtor's financial condition.

The exceptions to discharge set forth in section 523(a) of the Bankruptcy Code are limited to individual debtors, and prior to 2005, did not apply in a corporate chapter 11 case. Hence, debts that satisfied the elements for fraud under section 523(a)(2) were

discharged by confirmation of the plan. However, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 extended the fraud discharge exception to corporate chapter 11 cases by adding section 1141(d)(6) to the Bankruptcy Code. Section 1141(d)(6)(A) provides in pertinent part that "the confirmation of a plan does not discharge a debtor that is a corporation from any debt . . . of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit." No other exceptions to discharge under section 523(a) were incorporated into chapter 11, including section 523(a)(7) which renders non-dischargeable a non-tax debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."

Until the Supreme Court settled the question in *Cohen*, courts disagreed over whether the discharge exception was limited to the victim's pecuniary loss or extended to non-compensatory awards such as punitive damages. In *Cohen*, a landlord (Cohen) overcharged his tenants and ignored an order to refund the excess rents in the sum of $31,382.50. *Cohen*, 523 U.S. at 215. Cohen subsequently filed a chapter 7 case and the tenants filed an adversary proceeding arguing that the debt was non-dischargeable because it arose from "actual fraud" within the meaning of 11 U.S.C. § 523(a)(2)(A). *Id.* They also sought treble damages plus attorneys' fees and costs pursuant to New Jersey law. *Id.* Following a bench trial, the Bankruptcy Court found that Cohen had committed actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A) and awarded the tenants treble damages totaling $94,147.50 plus reasonable attorneys' fees and costs, all non-dischargeable. *Id.* at 215-16. The District Court and Third Circuit Court of Appeals affirmed. *Id.* at 216.

The issue before the Supreme Court was whether the non-dischargeability provision reached the award of treble damages. *Id.* at 217. After examining the text of the statute and its historical antecedents, the Supreme Court held that it did:

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

*Id.* at 223.

Under *Cohen*, a plaintiff who recovers an award of compensatory and punitive damages and establishes the elements of section 523(a)(2)(A) is entitled to a declaration that the entire debt is non-dischargeable. Furthermore, where a governmental unit is the victim of actual fraud, a non-compensatory penalty that forms part of the award is non-dischargeable under section 523(a)(2)(A) even if it is also covered by section 523(a)(7). For example, in *Andrews v. Michigan Unemployment Ins. Agency*, 891 F.3d 245 (6th Cir. 2018), Andrews, a recipient of unemployment insurance from the Michigan Unemployment Insurance Agency ("Agency"),[3] failed to report to the Agency that she was working and earning wages. *Id.* at 247. The Agency found that she had committed fraud by failing to disclose the receipt of wages in order to obtain or increase her benefits and ordered restitution of $6,897.00 and penalties of $27,588.00. *Id.*

---

[3]    The decision reviewed two different cases, but it is sufficient for present purposes to discuss the facts of only one.

Andrews subsequently filed a chapter 13 case, and the Agency filed an adversary complaint alleging that Andrews's penalties were nondischargeable under § 523(a)(2)(A).  *Id.*  The chapter 13 discharge under 11 U.S.C. § 1328(a) is similar to the corporate discharge in chapter 11 in the sense that both discharges exclude debts that are not dischargeable under section 523(a)(2) but include non-compensatory penalties covered by section 523(a)(7).  Seizing on this distinction, the Bankruptcy Court granted Andrews's motion to dismiss the complaint, holding that although the penalties arose from Andrews's underlying fraud, they were non-compensatory penalties that fell under § 523(a)(7), and hence, the penalty debt could be discharged.  *Id.* at 248.  The District Court reversed holding that the entire debt, including penalties and restitution, was nondischargeable under § 523(a)(2).  *Id.*

The Sixth Circuit Court of Appeals affirmed.  Citing *Cohen*, the Sixth Circuit first concluded that the penalties arising from Andrews's fraud fell under section 523(a)(2). *Id.* at 249-50.  Citing *Husky*, where the Supreme Court noted that overlap among the discharge exceptions in section 523 was "inevitable," 136 S. Ct. at 1588, the Sixth Circuit concluded that "because the debt falls into § 523(a)(2), it is nondischargeable as 'any debt' arising from fraud, regardless of whether the debt could also fit under § 523(a)(7)." *Id.* at 251.

In *Cohen* and *Andrews*, the treble damages and penalties were assessed in favor of the victim of the fraud.  The question raised in this adversary proceeding is whether *Cohen*'s interpretation of section 523(a)(2)(A) is broad enough to reach the FCC Penalty.  Some courts have extended *Cohen* beyond victims of the fraud to any non-compensatory award in favor of a governmental unit that arose from a fraud perpetrated on a third

party. *See, e.g.*, *SEC v. Bilzerian* (*In re Bilzerian*), 153 F.3d 1278, 1282-83 (11th Cir. 1998) (disgorgement ordered in securities fraud action brought by SEC was non-dischargeable under section 523(a)(2)(A)); *Missouri v. Audley* (*In re Audley*), 268 B.R. 279, 285 (Bankr. D. Kan. 2001) (penalties imposed by state based on violations of consumer fraud statute were non-dischargeable under section 523(a)(2)(A); *SEC v. Kane* (*In re Kane*), 212 B.R. 697, 702 (Bankr. D. Mass. 1997) (disgorgement ordered in securities fraud action brought by SEC was non-dischargeable under section 523(a)(2)(A)); *cf. Texas v. Garner* (*In re Garner*), 515 B.R. 643, 650 (Bankr. M.D. Fla. 2014) (restitutionary award and penalties awarded against debtor under state consumer protection statute were non-dischargeable under section 523(a)(2)(A)).

More recently, however, the District Court in *South Coast Air Quality Mgmt. District v. Exide Techs.*, 613 B.R. 79 (D. Del. 2020), reached the opposite conclusion. There, the Reorganized Debtor had operated a lead battery recycling facility in Vernon, California. *Id.* at 81. The plaintiff (the "District"), a state-level air-quality regulatory agency, had issued five notices of violation ("NOVs") alleging that Exide had failed to submit required reports, exceeded airborne emissions levels, and had failed to implement "good operating practices." *Id.* at 82. The District brought a lawsuit against Exide that culminated during Exide's chapter 11 case in a Non-Prosecution Agreement in which, *inter alia*, Exide admitted to having committed a number of environmental violations at its California facility over the previous two decades and "knowingly storing corrosive and lead-contaminated hazardous waste inside leaking van trailers . . . parked at the [Vernon] Facility." *Id.* at 83. The parties estimated that the direct costs of Exide's

compliance (*i.e.*, the closure and remediation efforts) would be between approximately $108 and $133 million. *Id.*

After confirmation of Exide's plan of reorganization, the District continued its lawsuit and sought substantial penalties which Exide contended had been discharged by the plan. *Id.* at 83. Exide argued before the Bankruptcy Court that the District's claim sought to collect ordinary non-compensable penalties owed to a governmental unit pursuant to § 523(a)(7), which are excepted from discharge only in the cases of individual debtors, not corporate debtors. *Id.* at 84. In addition, the District's claim did not fall within any of the other narrow exceptions to the corporate discharge under the Bankruptcy Code. *Id.* The Bankruptcy Court agreed, and the District appealed. *Id.* at 85.

The District Court affirmed. *Id.* at 90. It first ruled, as did the Bankruptcy Court, that the District's original proof of claim did not allege fraud, and its amended proof of claim did not relate back to its original claim. *Id.* at 87. The District Court next ruled that even if fraud had been alleged, section 523(a)(2)(A) did not apply:

> The discharge exception "for claims arising from fraud" under § 523(a)(2)(A) is not applicable to the District's claim because the claim did not satisfy a prima facie element of fraud: "that a creditor sustained loss and damages as a proximate result of the misrepresentations having been made." *Exide*, 601 B.R. at 282 (internal citation omitted). As the Bankruptcy Court correctly concluded, "These penalties do not represent the amount of loss or damages sustained by the District that were cause[d] by any alleged misrepresentation of the Debtors; they are noncompensatory penalties for violating emission standards. Therefore, the District's claim does not satisfy the fifth element of a prima facie case for nondischargeability under § 523(a)(2)(A)." *Id.* at 283. . . . The Court agrees with the Bankruptcy Court's understanding of *Cohen* as allowing "noncompensable penalties" to be dischargeable except when they were "awarded as part of the fraudulent debt."

*Id.* at 87-88.

The Court agrees with the reasoning of *Exide* and concludes that section 523(a)(2)(A), and hence section 1141(d)(6)(A), does not reach the FCC Penalty. As *Field v. Mans*, 516 U.S. 59 (1995), illustrates, the surest way to misinterpret the scope of section 523(a)(2)(A) is to read it literally. In that case, William and Norinne Field (the "Fields") sold real estate to Mans in exchange for $275,000 in cash and a $187,500 note secured by a second mortgage on the property. *Id.* at 61. If Mans transferred the property without the Fields' consent, the entire unpaid balance on the note would become payable. *Id.* at 61-62. Four months later, Mans transferred the property to a newly formed partnership without the Fields' knowledge or consent, triggering the due-on-sale clause. *Id.* at 62. The next day, Mans wrote to the Fields asking them to waive their rights under the due-on-sale clause, saying that he sought to avoid any claim that the clause might apply if he added a new principal to his land development organization. *Id.* The letter did not mention that Mans had already conveyed the property. *Id.* The Fields offered to waive the due-on-sale clause if Mans paid them $10,500, and Mans counteroffered with $500, again failing to disclose the conveyance. *Id.* There were no further written communications. *Id.*

Three years later, Mans filed a chapter 7 bankruptcy case in the District of New Hampshire and the Fields filed an adversary proceeding to declare the debt non-dischargeable under the section 523(a)(2)(A). *Id.* The Bankruptcy Court found that Mans's letters constituted false representations on which the Fields had relied to their detriment in extending credit. *Id.* at 62-63. However, First Circuit law required the plaintiff to show that his reliance was objectively reasonable, and the Bankruptcy Court

concluded that the Fields had unreasonably relied on Mans's letters without making further inquiry. *Id.* at 63. Accordingly, the Bankruptcy Court ruled that the debt was dischargeable, and the District and Circuit Courts affirmed. *Id.* at 63.

The issue before the Supreme Court was whether a claim of actual fraud under section 523(a)(2)(A) required the plaintiff to demonstrate reasonable reliance or justifiable reliance. *Id.* The Court noted that the subsection gave no clue and could even be read not to require any of the elements of fraud:

> Section 523(a)(2)(A) speaks in the language neither of reliance nor of materiality nor of intentionality. If the contrast [with section 523(a)(2)(B)] is enough to preclude a reasonableness requirement, it will do as well to show that the debtor need not have misrepresented intentionally, the statement need not have been material, and the creditor need not have relied. But common sense would balk. If Congress really had wished to bar discharge to a debtor who made unintentional and wholly immaterial misrepresentations having no effect on a creditor's decision, it could have provided that. It would, however, take a very clear provision to convince anyone of anything so odd, and nothing so odd has ever been apparent to the courts that have previously construed this statute, routinely requiring intent, reliance, and materiality before applying § 523(a)(2)(A).

*Id.* at 68. Rejecting such an "odd" reading at which "common sense would balk," the Supreme Court construed section 523(a)(2)(A) "to incorporate the general common law of torts," *id.* at 70 n.9, which requires justifiable reliance. *Id.* at 70-75.

Although *Field v. Mans* was the typical case involving the "five fingers of fraud" — (1) a misrepresentation, (2) fraudulent intent, or *scienter*, (3) intent to induce reliance, (4) justifiable reliance, and (5) pecuniary loss, *see* RESTATEMENT (SECOND) OF TORTS § 525 — the Supreme Court read section 523(a)(2)(A) more broadly in *Husky*, 136 S. Ct. 1581, to extend to actual fraudulent conveyances despite the absence of a misrepresentation. There, Chrysalis Manufacturing Corporation incurred a debt to

Husky of nearly $164,000 but the debt was not itself the product of any fraud. *Id.* at 1585. However, Chrysalis's principal (Ritz) transferred Chrysalis's property to affiliates with intent to hinder, delay and defraud Husky's collection efforts. *Id.* Ritz eventually filed for chapter 7 bankruptcy and Husky commenced an adversary proceeding seeking to hold Ritz personally liable for Chrysalis' debt and declaring the debt non-dischargeable, *inter alia*, because the same intercompany-transfer scheme constituted "actual fraud" under section 523(a)(2)(A). *Id.* The District Court held that Ritz was personally liable for the debt under Texas law. *Id.* However, it also ruled that section 523(a)(2)(A) did not except the debt from discharge because Ritz had not made a misrepresentation and the Fifth Circuit Court of Appeals affirmed. *Id.* at 1585-86.

The Supreme Court reversed. *Id.* at 1586. The Court began with an analysis of the history of the current Bankruptcy Code (which added "actual fraud" to the types of non-dischargeable frauds under the 1898 Bankruptcy Act) and concluded that "anything that counts as "fraud" and is done with wrongful intent is 'actual fraud.'" *Id.* Furthermore, the term "fraud" historically encompassed intentional fraudulent transfers:

> There is no need to adopt a definition for all times and all circumstances here because, from the beginning of English bankruptcy practice, courts and legislatures have used the term "fraud" to describe a debtor's transfer of assets that, like Ritz' scheme, impairs a creditor's ability to collect the debt.

*Id.* "Equally important," fraudulent conveyances are a "fraud" even though they do not require a misrepresentation, and this principle also "underscores the point that a false representation has never been a required element of 'actual fraud,' and we decline to adopt it as one today." *Id.* at 1587-88.

While "actual fraud" under section 523(a)(2)(A) is not always easy to define, *Field v. Mans* and *Husky* make clear that it is tethered to the common law concept of fraud. Even if "actual fraud" may exist in the absence of a misrepresentation, as in the case of an intentional fraudulent transfer, the Government's argument would eliminate every requirement of any conceivable common law fraud claim, including the requirement for pecuniary injury.  Under the Government's formulation of section 523(a)(2)(A), the FCC Penalty should be non-dischargeable despite the absence of a misrepresentation to the FCC, an intent to deceive or induce reliance by the FCC, actual reliance by the FCC, and any pecuniary loss suffered by the FCC.  The FCC Penalty is a statutory claim arising from a fraud perpetrated on another and not a common law fraud claim that seeks to recover for the FCC's own injury.  In both *Cohen* and *Husky*, the plaintiffs were the injured victims of the fraud and neither decision extends the notion of common law fraud to someone who has not been defrauded and has not suffered a pecuniary loss. Accordingly, Fusion's motion to dismiss the complaint is granted.

Settle order on notice.

Dated: New York, New York
July 9, 2020

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge